**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 200098-U

Order filed October 28, 2022

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois. |
| Plaintiff-Appellee, | ) ) | Appeal No. 3-20-0098 |
| v. | ) ) | Circuit No. 18-CF-425 |
| JAMIE L. WEYRICK, | ) ) ) | The Honorable Paul P. Gilfillan, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE DAUGHERITY delivered the judgment of the court.
Justices Holdridge and Hettel concurred in the judgment.

**ORDER**

¶ 1    *Held*:    In an appeal in a criminal case in which defendant was convicted of first degree murder and unlawful possession of a weapon by a person previously adjudged delinquent, the appellate court found that the trial court did not err in: (1) denying defendant's motion to suppress the videotaped statement defendant made to police; and (2) denying defendant's motion *in limine*, made in the alternative, requesting that certain portions of defendant's videotaped statement be redacted. The appellate court, therefore, affirmed the trial court's judgment.

¶ 2    After a jury trial, defendant, Jamie L. Weyrick, was convicted of first degree murder (720

ILCS 5/9-1(a)(1) (West 2018)) and unlawful possession of a weapon by a person previously

adjudged delinquent (720 ILCS 5/24-3.1(a)(2) (West 2018)) and was sentenced to consecutive prison terms of 80 years and 1 year, respectively. Defendant appeals, arguing that the trial court erred in: (1) denying defendant's motion to suppress the videotaped statement he made to police; and (2) denying defendant's motion *in limine*, made in the alternative, requesting that certain portions of defendant's videotaped statement be redacted. We affirm the trial court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4        On July 8, 2018, at about 9:14 p.m., Terrence Stone was shot and killed in the 900 block of West Nebraska Street in Peoria, Illinois, while he was standing at the trunk of his car trying to fix his vehicle.[1] Defendant, who was 18 years old when the shooting occurred, was on juvenile parole at the time and was required to wear an ankle monitor that continuously showed his location through the use of Global Positioning System (GPS) satellites. A few days after the shooting occurred, the police were able to determine from the data generated by defendant's ankle monitor that defendant was at the location of the shooting when the shooting took place. The police took defendant into custody and interrogated defendant. Defendant gave a videotaped statement denying that he had committed the shooting but also made certain incriminating remarks. The State subsequently charged defendant with first degree murder and unlawful possession of a weapon by a person previously adjudged delinquent in relation to the shooting death of Stone.

¶ 5        During pretrial proceedings, defendant filed a combined motion seeking either suppression or redaction of his videotaped statement to police. In the motion to suppress part of the combined motion, defendant claimed that his videotaped statement was not a voluntary

---

[1] It is unclear from the record whether the vehicle that had broken down was the victim's vehicle or someone else's. For the purpose of simplicity, however, we will refer to that vehicle here as the victim's vehicle.

statement and was required to be suppressed because it was taken after defendant had invoked his right to remain silent. In the motion *in limine* part of the combined motion, defendant requested, in the alternative, that certain portions of his videotaped statement be redacted as being too prejudicial because those portions referred to defendant being on parole or contained derogatory statements that the interrogating officer made to or about defendant (such as, that defendant was "stupid").

¶ 6 In June 2019, a hearing was held on the combined motion over two separate dates in the trial court. On the first court date, the parties stipulated to the foundation for the admission of defendant's videotaped statement into evidence for the purpose of the hearing. No other evidence was presented on the motion. Of relevance to this appeal, at the beginning of the videotaped statement, defendant was read his *Miranda* rights and verbally indicated to the police officer that he understood those rights. However, when the officer asked defendant if he was willing to speak to the officer (after informing defendant of his rights), defendant shook his head "no" for about a second and then immediately said something. Although difficult to discern on the video, it appears that defendant immediately said "what" after he shook his head. The officer informed defendant that he "need[ed] a yes or a no" and that "body language [did not] count with [him]." Defendant responded, "yeah."

¶ 7 The interview proceeded after that point. Defendant changed his story multiple times throughout the interview as he was confronted with additional information regarding his whereabouts or activities shortly before, during, or after the murder occurred (from the GPS data generated by the ankle monitor and/or video surveillance obtained by the police after using the ankle-monitor data to ascertain defendant's location at various times throughout the evening). Defendant eventually admitted during the interview that he was by himself at the location of the

3

shooting when the shooting occurred and that he heard the shots fired but denied that he had committed the shooting. Defendant also indicated that the victim had stated something to defendant for which someone had to kill the victim and that defendant was happy that the victim had been killed because the victim was a member of the Bomb Squad (apparently, one of the gangs in the area) and was on the wrong side of town.

¶ 8    On the second court date, the attorneys made their oral arguments on the combined motion, and the trial court announced its ruling. After watching the videotaped statement and considering the oral arguments, the trial court denied defendant's motion to suppress the videotaped statement, finding that defendant's decision to speak to the police was entirely voluntary under the totality of the circumstances. In reaching that conclusion, the trial court commented that defendant's momentary head shaking motion was an ambiguous gesture and that the police officer conducting the interview had a right, therefore, to follow-up with defendant to determine what defendant's ambiguous gesture meant. Of relevance to this appeal, the trial court stated further, "[i]n order to invoke a person's right to cut off questions or to refrain from answering questions in the first place, a suspect or defendant has to either state he wants to remain silent or states [*sic*] that he does not want to talk to police."

¶ 9    The trial court also denied defendant's motion *in limine*, finding that defendant's parole status and the fact that defendant was on a GPS monitor were an integral part of the police's investigation into the matter. In reaching that conclusion, the trial court stated, in pertinent part, as follows:

> "Normally that type of stuff is things we don't want the jury to hear, that a defendant was convicted of a prior crime. Someone might conclude, well, if he did some prior crime, he must have done this crime. That is highly prejudicial.

4

Any evidence against a defendant by definition is prejudicial. And this case, because no two cases are the same, provides a perfect example of why that evidence should come in. It is probative.

It is part of the investigation, based on what I have learned in watching the DVD, as to what eventually led to the Defendant's arrest and being charged with this particular crime here.

Without reference to him being on a GPS, the State would be gutted of a large portion of its case. And they're entitled to present all of their evidence against a defendant to show, if they can, that he was guilty of this crime beyond a reasonable doubt.

And part of that is placing him at the scene and how the officers knew it and why that then led them to conclude that he did commit this crime."

¶ 10   The trial court cautioned the State, however, not to overemphasize defendant's parole status to the jury, stating:

"Now, I will agree that that evidence should come in as is, and it will not be taken advantage of by the State or overemphasized to the point where they are clearly trying to use this in a fashion that would cross that prejudicial line by emphasizing it over and over again to the jury either by questioning of the witnesses or in opening statements or closing arguments. That's not going to happen.

Defense counsel should always have that on his list of objections when the topic comes up for there may be a point where it does cross the line and need [*sic*] to be stamped out."

¶ 11    In November 2019, a jury trial was held in defendant's case. The trial took three days to complete. The evidence presented at the trial established the following. On the evening of July 8, 2018, shortly before the shooting occurred, defendant was riding around in Ty Pullen's black Saturn sedan with Pullen and Deangelo Coleman. Pullen was driving, defendant was in the front passenger's seat, and Coleman was in the rear seat of the vehicle. Defendant was on parole at the time for a prior juvenile offense and was wearing an ankle band with a GPS device in it that monitored defendant's location.

¶ 12    As defendant and the others were driving around in Pullen's car, the victim had stopped in his vehicle on West Nebraska Street because he was having car trouble. The victim's girlfriend, Mariah Jackson, and another person, Mikel Satcher, were with the victim at the time. Jackson was texting Michael Smith, the father of her child. While Jackson was at that location on Nebraska Street, Michael came to that location to drop off his and Jackson's child with Jackson. Michael had his two brothers, Mykell and Miray Smith, with him. A verbal argument ensued between Jackson and Michael, followed by a brief physical altercation between the victim and Michael. After the altercation was over, Michael and his brothers left the Nebraska Street location.

¶ 13    Shortly thereafter, defendant and the others rode past the victim's location in Pullen's black Saturn. After driving past the victim three or four times, Pullen pulled his vehicle into or by a nearby alley. Defendant took the gun that Pullen kept behind the driver's seat, got out of the vehicle, and walked down the alley toward the victim. Pullen and Coleman stayed in the vehicle. Defendant was gone from the vehicle for a few minutes. During that time, Pullen heard gun shots. Defendant returned to the vehicle, got back in, and put the gun back in its original location. Defendant, Pullen, and Coleman then left the area in Pullen's vehicle.

6

¶ 14    Just before the shooting took place, Jackson got out of the front seat of the victim's vehicle. The victim was standing at the back of the car reaching into the open trunk of the vehicle. Jackson looked over at the victim and saw that there was a thin, light-skinned male standing behind him. The male subject had a shirt over his nose and mouth. The male subject fired several shots at the victim and then took off running up the alley. The police responded to the scene a few minutes later. The victim died shortly thereafter. Jackson told the police what had occurred, gave the police a description of the shooter, and also told the police that the shooter had part of his face covered. Jackson identified the shooter as Mykell Smith (the brother of her child's father, Michael Smith) because of the physical altercation that had occurred between the victim and Michael a short-time earlier and because Mykell was the only one of the three Smith brothers that was light-skinned. The detective who was in charge of investigating the shooting, however, had some concerns about Jackson's identification and did not have Mykell arrested at that time.

¶ 15    The police processed the scene of the shooting and found three spent shell casings on the ground and one spent bullet in the trunk of the victim's vehicle. Two additional spent bullets were recovered from the victim's body during the autopsy.

¶ 16    A few days after the shooting occurred, defendant's juvenile parole officer returned to work for the week following his days off and checked the GPS status of the juvenile subjects he had on parole, one of which was defendant. Defendant had been on the parole officer's caseload "several different times." Upon checking the status of his juvenile subjects, the parole officer noticed that defendant's GPS information indicated that defendant was at or near the scene of the shooting when the shooting occurred. The police were contacted, and they obtained a search warrant for the GPS information. After reviewing the GPS information, the police went to

7

various locations in the area and obtained video footage from nearby cameras for the time period leading up to, and just after, the shooting. From the GPS and video information, the police were able to determine that defendant had been riding around in Pullen's black Saturn sedan shortly before and after the shooting, that the sedan stopped by a nearby alley minutes before the shooting occurred, that defendant got out of the vehicle and walked down the alley, that defendant was at or near the location of the shooting when the shooting occurred, that defendant ran back up the alley after the shooting, that defendant got back into Pullen's vehicle, and that defendant and the others immediately left the area in Pullen's vehicle.

¶ 17        After obtaining all of that information, the police questioned Pullen several times. Pullen repeatedly lied to the police about his involvement in, and knowledge of, the shooting. Eventually, Pullen told the police about defendant getting out of Pullen's vehicle with the gun in the area of the shooting, about hearing gunfire, and about defendant returning to the vehicle with the gun a few moments later. Pullen took the police to where the gun was located, rolled up in a towel in the attic of a home on Alexander Street.[2] The police recovered the gun at that time. Subsequent firearm testing showed that the shots that had killed the victim had been fired from Pullen's gun.

¶ 18        Based upon the information that they had gathered, the police took defendant into custody. Defendant was interrogated and made incriminating statements as indicated above. He was later charged with the offenses in the instant case.

¶ 19        At the conclusion of the trial, the jury found defendant guilty of both offenses and also found that defendant had personally discharged a firearm during the commission of the murder.

---

[2] Pullen had been charged with a firearm offense and with obstructing justice. Pullen testified at the trial that he was hoping to get probation on those offenses but denied that he had been promised anything by the State.

Defendant filed a motion for judgment notwithstanding the verdict or for new trial (motion for new trial), arguing, among other things, that the trial court had erred in denying both aspects of defendant's combined motion. The trial court denied defendant's motion for new trial and, after a sentencing hearing, sentenced defendant to consecutive prison terms of 80 years for first degree murder (55 years for first degree murder plus a 25-year mandatory firearm enhancement) and 1 year for unlawful possession of a weapon by a person previously adjudged delinquent. Defendant filed a motion to reconsider sentence, which the trial court denied. Defendant appealed.

¶ 20                                   II. ANALYSIS

¶ 21                        A. Motion to Suppress Statement

¶ 22        As his first point of contention on appeal, defendant argues that the trial court erred in denying defendant's motion to suppress the videotaped statement defendant made to police (the motion to suppress portion of defendant's combined motion). Defendant asserts that the motion should have been granted because the videotape showed that: (1) defendant clearly invoked his right to remain silent by shaking his head "no" when he was asked if he was willing to speak to the police after he had been given his *Miranda* warnings; and (2) the police failed to scrupulously honor defendant's invocation of his right to remain silent when they ignored defendant's refusal and pressured defendant into providing a verbal response and continuing the interrogation. In addition, defendant asserts that the trial court's ruling was also erroneous because during the hearing, the trial court found that defendant had to state that he either wanted to remain silent or that he did not want to talk to police, which was contrary to the law on this issue. For those reasons, defendant asks that we reverse the trial court's ruling, denying

9

defendant's motion to suppress the videotaped statement, and that we remand this case for further proceedings.

¶ 23    The State argues that the trial court's ruling was proper and should be upheld. In support of that argument, the State asserts first that the police officer in this case was not required to stop talking to defendant because defendant did not invoke his right to remain silent. According to the State, defendant's momentary shaking of his head did not clearly establish that defendant had invoked his right to remain silent, especially since defendant had given a verbal response to the other questions that the officer had asked defendant in reading defendant his *Miranda* rights, and it was proper, therefore, for the officer to request clarification from defendant. Upon the officer doing so, defendant responded affirmatively that he was willing to speak to the police. Second, and in the alternative, the State asserts that even if the trial court erred in this case by not suppressing the videotaped statement, any error that occurred was harmless because the evidence of defendant's guilt was overwhelming. For those reasons, the State asks that we reject defendant's argument on this issue.

¶ 24    In reply to the State's arguments, defendant makes three primary assertions. First, defendant asserts that the police officer understood that defendant was refusing to speak to the police but questioned that response because he did not like the answer. Second, defendant asserts that it contravenes the law and fundamental fairness to say that a defendant can sufficiently agree to talk to the police by nodding his head "yes" but cannot sufficiently refuse to talk to police by shaking his head "no." Third and finally, defendant asserts that any error that occurred in this case was not harmless beyond a reasonable doubt because defendant's videotaped statement was the strongest evidence against defendant. For those reasons and the initial reasons that defendant stated, defendant again asks that we reverse the trial court's ruling,

10

denying defendant's motion to suppress the videotaped statement he made to police, and that we remand this case for further proceedings.

¶ 25        A reviewing court applies a two-part standard of review to a trial court's ruling on a motion to suppress statement. See *People v. Slater*, 228 Ill. 2d 137, 149 (2008). The trial court's findings of fact and credibility determinations are given great deference and will not be reversed on appeal unless they are against the manifest weight of the evidence. *Id.* However, as to the ultimate legal question posed by the motion of whether suppression is warranted, *de novo* review applies. *Id.*

¶ 26        The federal and state constitutions guarantee that no person will be compelled to be a witness against himself or herself in any criminal case (the privilege or right against self-incrimination). U.S. Const., amend. V; Ill. Const. 1970, art. I, § 10. To protect that constitutional right, the law requires that police interrogation must cease once a suspect indicates in any manner and at any time prior to or during custodial interrogation that he wishes to remain silent. See *Miranda v. Arizona*, 384 U.S. 436, 473-74 (1966); *People v. Flores*, 2014 IL App (1st) 121786, ¶ 37; *People v. Kronenberger*, 2014 IL App (1st) 110231, ¶ 33. The right to remain silent may be invoked either verbally or through nonverbal conduct that clearly indicates a desire to end all questioning. *Flores*, 2014 IL App (1st) 121786, ¶ 37. However, to be given legal effect, an individual's invocation of the right to remain silent must be clear, unambiguous, and unequivocal. *Kronenberger*, 2014 IL App (1st) 110231, ¶ 33. At a hearing on a motion to suppress statement where a defendant claims that his statement to police was not voluntarily given, the State bears the burden of proving by a preponderance of the evidence that the defendant's statement was voluntarily made. See 725 ILCS 5/114-11(d) (West 2018); *Slater*, 228 Ill. 2d at 149.

11

¶ 27     In the present case, after reviewing the record and defendant's videotaped statement, we find that defendant did not clearly, unequivocally, and unambiguously invoke his right to remain silent. See *Kronenberger*, 2014 IL App (1st) 110231, ¶ 33. Although defendant shook his head "no" for about a second, he immediately stated "what" after doing so, which prompted the officer to seek clarification and to tell defendant that defendant needed to give a verbal response to the officer's question of whether defendant was willing to speak to the police about the matter under investigation. Defendant responded "yeah" to that question, and the interrogation proceeded. We, thus, conclude from the evidence presented that the trial court properly determined that defendant's head shaking was ambiguous, that the officer was justified in seeking clarification from defendant, and that defendant's decision to talk the police was voluntarily made. The trial court, therefore, properly denied the motion to suppress part of defendant's combined motion on that basis. See *id.* ¶¶ 31-38.

¶ 28     Contrary to defendant's assertion on appeal, this is not a case such as *People v. Nielson*, where the invocation of the right to remain silent, although nonverbal, was clear, unambiguous, and unequivocal. See *People v. Nielson*, 187 Ill. 2d 271, 287 (1999) (finding the defendant had invoked his right to remain silent when he placed his hands over his ears, turned his head to the ceiling, and chanted "nah nah"). Nor do we believe that the trial court's comment—that a defendant has to "state" that he wants to remain silent or that he does not want to talk to police— is significant here. By our view, taken in context, the trial court's statement in that regard was merely an expression of the law in this area that requires a defendant's invocation of the right to remain silent be clear, unambiguous, and unequivocal. See *Kronenberger*, 2014 IL App (1st) 110231, ¶ 33.

¶ 29    Having found that defendant did not clearly, unequivocally, and unambiguously invoke his right to remain silent in this case, we need not address the parties' other arguments on this issue.

¶ 30                                B. Motion *in Limine*

¶ 31    As his second point of contention on appeal, defendant argues that the trial court erred in denying defendant's motion *in limine*, requesting that certain portions of defendant's videotaped statement to police be redacted to remove the references made to defendant being on parole. Defendant asserts that in denying the motion *in limine* (the request for redaction), the trial court failed to properly balance the prejudicial impact of the statements about defendant being on parole against the probative value of those statements. According to defendant, the statements in the videotaped interview about defendant's parole status, along with the parole officer's testimony at the jury trial about defendant being on his caseload several times, indicated to the jury that defendant had multiple criminal convictions, was not necessary for the jury to hear for the jury to understand that defendant was wearing an ankle monitor, and was highly prejudicial because that information appealed to an improper basis for the jury to find defendant guilty—the jury's contempt for parolees and individuals with a criminal record. In addition, defendant maintains, the trial court failed to take any corrective action to limit the jury's consideration of the police's statements that defendant was on parole.[3] For those reasons, defendant asks that we reverse his convictions and that we remand this case for a new trial, presumably with the information about defendant being on parole redacted or excluded from the evidence.

_____

[3] It does not appear from the record in this case that the jury was given Illinois Pattern Jury Instructions, Criminal, No. 3.14 (4th ed. 2000) on the consideration of other-crimes evidence.

13

¶ 32    The State argues that the trial court's ruling on the motion *in limine* was proper and should be upheld. The State asserts that in making its ruling, the trial court clearly considered the probative value of the parole status/GPS monitoring evidence, the context in which that evidence was mentioned, and the prejudicial effect of that evidence. According to the State, the parole status/GPS monitoring evidence was extremely probative in this case and was essential to explain the police investigation that led to the arrest of defendant (how defendant was arrested and how the officers were able to obtain screenshots of defendant's location at various times on the night of the murder). The State also points out that as part of its ruling, the trial court instructed the prosecution not to emphasize the evidence of defendant's parole status and that there was no mention during defendant's jury trial of the specific crime of which defendant was previously convicted. As for the parole officer's testimony that defendant had been on his caseload multiple times, the State asserts that defendant has forfeited any argument on that issue because defendant failed to object to that testimony at trial and failed to raise the issue in his posttrial motion. For all of the reasons set forth, the State asks, therefore, that we reject defendant's argument on this issue.

¶ 33    In reply to the State's argument, defendant disputes that he forfeited the issue regarding the parole officer's testimony and states that the matter was properly preserved for appellate review because defendant raised the issue about his parole status in his motion *in limine*, the matter was litigated in the trial court, and the factual information relative to that issue is well established in the record, even though defendant acknowledges that he did not specifically include that matter in his posttrial motion. In the alternative, defendant asserts that even if that issue was potentially forfeited, this court should reach the merits of that issue, nevertheless, as a

14

matter of plain error. Defendant again asks, therefore, that we reverse his convictions and remand this case for a new trial.

¶ 34 A trial court's ruling on the admissibility of evidence, including a ruling upon a motion *in limine*, will not be reversed on appeal absent an abuse of discretion. See *People v. Pikes*, 2013 IL 115171, ¶ 12; *People v. Illgen*, 145 Ill. 2d 353, 364 (1991); *In re Leona W.*, 228 Ill. 2d 439, 460 (2008). The threshold for finding an abuse of discretion is high one and will not be overcome unless it can be said that the trial court's ruling was arbitrary, fanciful, or unreasonable, or that no reasonable person would have taken the view adopted by the trial court. See *Leona W.*, 228 Ill. 2d at 460; *People v. Donoho*, 204 Ill. 2d 159, 182 (2003). When considering the admission of other crimes evidence under an abuse of discretion standard, the reviewing court owes some deference to the trial court's ability to evaluate the impact of that evidence on the jury. *Donoho*, 204 Ill. 2d at 186. Reasonable minds can disagree about whether such evidence is admissible without requiring a reversal of a trial court's evidentiary ruling when the abuse of discretion standard applies. *Id.* In addition, even if the trial court has committed an abuse of discretion in the admission of evidence, it will not warrant a reversal of the trial court's judgment unless the record indicates the existence of substantial prejudice that affected the outcome of the trial. *Leona W.*, 228 Ill. 2d at 460.

¶ 35 As the above discussion implies, the parole status/GPS monitoring evidence in the instant case was in the nature of other-crimes evidence. The common law rule is that other-crimes evidence is not admissible to show a defendant's propensity to commit crimes. *People v. Dabbs*, 239 Ill. 2d 277, 283 (2010); *Donoho*, 204 Ill. 2d at 170; Ill. R. Evid. 404(b) (eff. Jan. 1, 2011). The concern with other-crimes evidence is not that it has too little probative value, but that it has too much, and that it may overpersuade a jury to convict a defendant merely because the jury

15

believes that the defendant is a bad person who deserves to be punished. See *People v. Manning*, 182 Ill. 2d 193, 213-14 (1998). However, other-crimes evidence may be admissible, in the discretion of the trial court, for any other relevant purpose, such as to show *modus operandi*, intent, identity, motive or absence of mistake. See *id.* at 214; *Illgen*, 145 Ill. 2d at 364-65. When a party seeks to admit other-crimes evidence, the trial judge must weigh the probative value of that evidence against its prejudicial effect, and may exclude the evidence if the prejudicial effect substantially outweighs the probative value. *Manning*, 182 Ill. 2d at 214. Because of the high risk of prejudice involved with other-crimes evidence, the erroneous admission of such evidence ordinarily requires a reversal. See *id.*

¶ 36 In the present case, after reviewing the record, we decline to apply the forfeiture rule to any part of defendant's argument here. See *People v. Custer*, 2019 IL 123339, ¶ 19 (noting that the forfeiture rule is a limitation on the parties and not on the court). As defendant correctly notes, he did raise an issue about his parole status in his motion *in limine*, albeit in the context of his videotaped statement, and the relevant underlying facts have been sufficiently established in the record for us to review the merits of this entire issue.

¶ 37 Turning to the merits, then, we find that the trial court did not err in denying defendant's motion *in limine* (the motion *in limine* portion of defendant's combined motion). As the trial court correctly found, defendant's parole status and the fact that defendant was on a GPS monitor at the time of the shooting were an integral part of this case. Although the trial court could have redacted the term "parole" from the videotaped statement and from the parole officer's testimony, the jury still would have been informed that defendant was on a GPS monitor at the time of the offense and would have realized that defendant was being monitored by the criminal justice system. While the trial court allowed the term "parole" to be stated in front of the jury, it

16

preemptively cautioned the State not to emphasize that information. The State apparently followed that instruction as defendant makes no claim on appeal that the State improperly emphasized the parole status information to the jury. Finally, even though the parole officer's brief statement in testimony that defendant had been on his caseload "multiple different times" was somewhat problematic, the State did not linger on, or emphasize, that response and promptly moved on to the next question. In addition, and contrary to defendant's assertion on appeal, the parole officer's statement in that regard did not indicate whether defendant had been on juvenile parole for multiple cases, as defendant suggests, or merely for a single case multiple times. Thus, under the particular circumstances of the instant matter, we conclude that the trial court properly exercised its discretion when it denied defendant's motion *in limine*. See *Leona W.*, 228 Ill. 2d at 460; *Donoho*, 204 Ill. 2d at 182. We, therefore, affirm defendant's convictions and sentences.

¶ 38                                  III. CONCLUSION

¶ 39        For the foregoing reasons, we affirm the judgment of the circuit court of Peoria County.

¶ 40        Affirmed.